## LAWYERS LEAD & ZINC CO. v. OKLAHOMA TAX COMMISSION.

### No. 29820. April 1, 1941.

*111 P. 2d 1085.*

Paul E. Bradley and Chas. M. Grayston, both of Joplin, Mo., and McInnis & Thompson, of Oklahoma City, for plaintiff in error.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, of Oklahoma City, for defendant in error.

DAVISON, J. The present action was instituted by plaintiff in error, as plaintiff, to recover from defendant in error, as defendant, the principal sum of $547.36, paid under protest by the former to the latter under the Oklahoma Income Tax Law of 1935 (art. 6, ch. 66, S. L. 1935) as a tax on income from a lead and zinc mining lease owned by plaintiff company.

The trial court's judgment was in favor of the defendant, and plaintiff thereafter lodged this appeal.

Reference to the parties as they appeared in the trial court will hereinafter be continued.

When plaintiff acquired its lease on the land in question, there was a lead and zinc mine thereon. In its operation of said mine, a prior lessee had removed from mineral veins found therein quantities of ore-bearing rocks, and conveyed same to a mill, where they were run through a series of crushers, reducing them to the size of chats or tailings. These chats or tailings were then piled upon the surface of the land and were there when plaintiff acquired its lease.

Among other facts narrated herein, it was stipulated and agreed between the parties that the above-mentioned processes did not remove from the rocks all of their mineral content, but there remained in the chats or tailings small particles of lead and zinc ores.

During 1935, the year in question, plaintiff derived its income from the sale of zinc concentrates extracted from ore in the above-described tailings, as well as from ore it brought from beneath the surface in underground mining operations. It claimed a deduction in its total income of 15 per centum (15%) for depletion under section 9 of the Income Tax Act, supra. The defendant allowed said deduction on the income from the sale of the zinc concentrates extracted from the ore plaintiff itself brought to the surface, but denied such deduction on the income from the sale of the zinc concentrates it extracted from the tailings already on the surface when it acquired the lease.

Plaintiff's position is that the defendant erred in thus drawing a distinction in its income, and that it is entitled to the deduction for depletion on its income from the zinc concentrates extracted from the tailings just as it was on its income from such concentrates extracted from the ore it mined in the underground operations.

The portion of the Income Tax Act, supra, involved herein is section 9. The applicable provisions of said section are as follows:

"In computing the net income, there shall be allowed as deductions from gross income: . . .

"(g) A reasonable allowance for depreciation, to cover the exhaustion, wear and tear of property, . . . when such property is used in trade or business, . . . and an allowance, according to the peculiar conditions in each case; in the case of mines, oil or gas wells, other mineral or natural deposits . . . situated within the state, to cover the depletion caused by the removal from the natural state of such products, together with the depreciation of improvements used in connection with such operations; such allowance in all cases to be made under rules and regulations to be prescribed by the commission, and to be based upon cost of the particular property, including the cost of development not otherwise deducted. . . .

"Such allowance shall not exceed fifty per centum (50%) of the net income of the taxpayer (computed without allowance for depletion) from the property; and provided, further, that in the case of income derived from coal and metal mines and sulphur mines or deposits, any such taxpayer may at his option deduct as an allowance for depletion in lieu of the calculation of depletion as otherwise provided for herein, the following per centum . . . in the case of metal mines, fifteen per centum (15%) . . . of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed fifty per centum (50%) of the net income of the taxpayer (computed without allowance for depletion) from the property."

The operations producing the income in question were carried on by plaintiff under the following provision of its lease:

"All tailings and mine refuse now upon the land or produced from said land during the term of this lease shall be the property of the lessor; provided, however, that the lessee shall have the right to re-mill said tailings during the life of the lease, either himself or under approved tailings sublease, or the lessee may sell or dispose of the tailings for crushed rock or other purposes after first obtaining the approval of the duly authorized representative of the Department of the Interior as to price and terms. The gross proceeds from said re-milling shall carry the same rate of royalty to the landowners as the primary concentrates produced on said land."

The argument on behalf of the defendant is presented under four propositions. It is unnecessary to deal with these in detail, however, for, as we view the case, all the decisive questions involved are settled by the decision of the Circuit Court of Appeals in Atlas Milling Co. v. Jones, 115 Fed. 2d 61. In that case the court denied the taxpayer's claim to a deduction for depletion on income like that involved herein on the ground that the word "mines" as used in the Federal Act (Revenue Act of 1932, 47 St. L. 169) authorizing "in the case of mines . . ." a reasonable allowance for depletion, is limited to natural deposits and does not include a "tailings" dump deposited on the surface of the land consisting of residue of ore that has been severed and milled. A comparison of the state law in question with the federal law so construed reveals no basis for a valid distinction between this case and the one just referred to.

In addition to the stipulated facts hereinbefore mentioned, our attention is called to the parties' stipulation that the particles of lead and zinc ore plaintiff herein extracted from the tailings and sold for the income in question were in the "same natural state or condition" as before the rock, of which they were a part, was taken from below the surface; that in extracting the ores from said chat or tailings, the same operations were necessary as were used in extracting ore from the rock taken out of the mine and conveyed directly to the crushers, except the first crushing process; and that the concentrates from the sale of which the income in question was derived were not recovered from secondary mineral or materials, had never been marketed before, and were sold as primary concentrates.

We find nothing in the stipulation above described, however, to relieve this case from the operation of the principles applied in the Atlas Milling Company Case, supra. In addition to the facts here-

inbefore mentioned, it was also stipulated that all of the "free" or coarse ore had been removed from the tailings left on the land before plaintiff acquired its lease. It was not claimed that this did not constitute an original milling of said ore-bearing rocks, that plaintiff's operations did not constitute re-milling the same, nor that said operations were carried on under any other provision of the lease contract save and except the re-milling provision, hereinbefore quoted.

Counsel for plaintiff seem to be of the opinion that a construction of the depletion provisions of the state act like that placed upon the similar portion of the federal act would result in an ambiguity which should be resolved in favor of the taxpayer. We fail to perceive that the claimed ambiguity results from such a construction, however. If there is any apparent difficulty in the application of that construction to the present case, it is the result, not of an ambiguity in the act, but of the parties' stipulation that the ore in the tailings was in its "natural state." This, however, cannot affect the meaning of the act, nor can the parties thereby make mines and natural or metal deposits of operations and materials that under the law are not so considered. The Circuit Court of Appeals in the Atlas Milling Company Case, supra, has held that the extraction of minerals from tailings remaining after ore has been milled and concentrates removed therefrom does not constitute the operation of a "mine" under the Federal Tax Act, and we perceive of no valid reason for adopting a different construction of the state act in question. Consequently, we hold that the portion of section 9, art. 6, ch. 66, S. L. 1935, allowing a deduction for depletion "in case of mines" is not applicable to the present case. The judgment of the trial court is, therefore, affirmed.

WELCH, C. J., CORN, V.C.J., and RILEY, OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur.