No. 35,505

NATURAL GAS PIPE LINE COMPANY OF AMERICA, *Appellant*, v. STATE COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KANSAS, Composed of JOHN McCUISH, WILLIAM LJUNGDAHL and FRED HORN, Commissioners; and BERT E. MITCHNER, Director of Revenue, *Appellees*.

(125 P. 2d 397)

Opinion filed May 9, 1942.

*Ned P. Gilbert,* of Chicago, Ill., argued the cause, and *H. A. Russell,* of Topeka, and *J. J. Hedrick,* of Chicago, Ill., were on the briefs for the appellant.

*James D. Dye,* of Ottawa, argued the cause, and *Vernon C. Rosenstahl,* of Parsons, and *Mason Mahin,* of Smith Center, were on the briefs for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This is an appeal from a judgment affirming an order of the state commission of revenue and taxation denying plaintiff's claim to a deduction from its income tax assessment for 1937 a considerable sum of money which it paid as interest on that portion of its bonded indebtedness held by its stockholders.

The legal questions were developed by the pleadings and a lengthy stipulation of facts. Plaintiff is a Delaware corporation engaged in the transportation of natural gas to distributors and customers in Kansas and by pipe lines through Kansas into Nebraska, Iowa and Illinois. Its business is exclusively interstate. In 1938 it filed with the Kansas state tax commission a tentative income tax return for the calendar year 1937, and paid thereon $13,394.56 as the allegedly correct amount of the state income tax due on the Kansas allocation of its interstate business.

Sometime later plaintiff was notified by the state tax commission that there was an additional liability of $11,337.28 due the state of Kansas, predicated on an illegal deduction of the amount plaintiff had paid to its stockholders as interest on that part of its bonded debt held by them.

In correspondence between the commission and the taxpayer and on hearings before the commission the facts concerning the origin of that bonded debt were developed without dispute. It appears that plaintiff was organized in 1930 and granted a certificate to do business in Kansas the same year. The requisite money for acquiring rights of way, constructing its pipe lines and facilities, and acquiring leaseholds for an adequate supply of natural gas, and for miscellaneous expenditures incidental to the inception of its corporate business, was raised by the sale of 1,499,000 shares of no par value stock and by issuing promissory notes bearing 8-percent interest. The stockholders of the company furnished the money and received these notes which had an aggregate face value of $56,412,-236.88; and when interest thereon had accrued to the amount of $2,709,550.84, plaintiff issued to the stockholder-owners of the notes 1,499,000 additional shares of its treasury stock and $60,000,000 of its so-called gold bonds secured by a mortgage on its corporate properties. In exchange therefor the stockholder-owners of the 8-percent promissory notes surrendered them to the plaintiff.

The stock of the plaintiff corporation is largely held by a group of affiliated corporations, and 73.36979 percent of the plaintiff's bond issue is likewise held by them. The remainder of plaintiff's outstanding bond issue, 26.63021 percent, is held by outside investors.

The question of present concern is whether the annual interest which plaintiff pays to its stockholder-owners of 73.36979 percent of its bond issue is a proper deduction in computing plaintiff's proportionate net income attributable to its Kansas business under our state income tax statute. So far as here pertinent that statute reads:

"In computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid during the taxable year in carrying on any trade or business;

"(2) All interest paid during the taxable year on indebtedness, except . . . *interest paid to stockholders or shareholders, or members of their immediate families unless the interest was paid on money actually borrowed for ordinary expenditures for actually carrying on the business of the corporation;* . . ." (G. S. 1941 Supp. 79-3206.)

The pertinent administrative regulation promulgated by the state commission of revenue and taxation states the same rule thus:

"ARTICLE 42: *Interest.* Interest paid to stockholders, shareholders, etc., is deductible only if the interest was paid on money actually borrowed for ordinary expenditures for actually carrying on the business of the corporation.

"Interest paid to stockholders or shareholders on money borrowed for current financing to supply the current working capital of the corporation is deductible. Interest paid to stockholders on money borrowed or used for capital expenditures to supply the fixed assets or fixed capital of the corporation is not deductible."

The trial court sustained the position taken by the defendant commission, and the controversy is brought here for review. Plaintiff makes two contentions, *first,* that the statute correctly construed authorizes the deduction of the interest paid to plaintiff's stockholder-owners of 73.36979 percent of its bonded indebtedness; and *second,* if the statute correctly construed disallows such deduction in computing its net income attributable to plaintiff's corporate business in Kansas it is unconstitutional under the fourteenth amendment, and article XI, section 1, of the state constitution.

Plaintiff assails the position of the defendant commission and the trial court that the money originally borrowed by the corporation on its 8-percent promissory notes which were refinanced by its issue of gold bonds in exchange therefor was an expenditure of a capital nature. It asserts that it was simply "money actually borrowed for

ordinary expenditures for actually carrying on the business of the corporation" within the precise text of the statute. In support of that contention counsel for plaintiff invite us to consider critically the term "expenditures" as it appears in the statute under discussion; and certain textbooks on auditing and accounting do appear to differentiate between the terms "expenditures" and "expenses." We shall not cavil about such niceties, however, preferring as we do to rely on the time-tried authorities which have served us well in not dissimilar controversies. In Black's Law Dict., 3d ed., 724; 15 Words & Phrases, Perm. ed., 673, 689; Webster's New International Dict. 2d ed., and Soule's Dict. of Synonyms, p. 197, the words "expenditures" and "expenses" are defined as synonymous terms. Both words mean an outlay of money and they will be so regarded in the case at bar. (*Wisconsin v. J. C. Penney Co.*, 311 U. S. 435, 443, 444, 130 A. L. R. 1229, 1232, 1233.)

Touching the contention that the company's original issue of 8-percent promissory notes which were refinanced into its 6-percent gold bonds was given for "money actually borrowed for ordinary expenditures for actually carrying on the business of the corporation," we think that contention untenable. Money expended to set on foot the business of an interstate gas distributing company—its acquisition of rights of way, laying of pipe lines, construction of compressor stations, procuring large areas of gas-producing leaseholds, and all the miscellaneous expenditures incidental to the inception of the corporation as a going concern—are not ordinary expenditures of the corporation for which deduction is allowed in the income-tax statute. They are capital expenditures, which once made do not ordinarily recur. They do not have to be repeated from year to year as ordinary outlays of money for actually carrying on the business of the corporation.

In Black on Income and other Federal Taxes, 4th ed., section 138, it is said:

"In computing allowable deductions, a distinction is to be made between expenditures which are in the nature of an investment of capital assets and those which are properly described as current expenses. Thus, in the case of a manufacturing establishment, the purchase and renewal of the machinery necessary for the operation of the plant would be regarded as an investment of capital, and could not be deducted as an item of expense. . . . On the other hand, where a plantation is set out with rubber trees, some of which have reached the age of producing, but others not, the expense of cultivating, weeding, and caring for those portions of the estate not yet in bearing is a proper

deduction, and as it is an annually recurring expense, it is prima facie not capital expenditure, but income expenditure, and so deductible."

And in section 140 of the same work it is said:

"Any and all expenses incidental to or connected with the selling of the capital stock (common or preferred) of a corporation for the purpose of raising capital to be by it invested in property or employed in the business for which the corporation is organized are not an 'expense of operation and maintenance' within the meaning of this title, and such expense is not an allowable deduction from the gross income, for the reason that such an expense is incurred in a capital transaction; that is, the raising of capital to be invested or employed in the business."

See, also, *Hubinger v. Commissioner of Internal Revenue,* 36 F. 2d 724, syl. ¶ 2; *Parkersburg Iron & Steel Co. v. Burnet,* 48 F. 2d 163; Paton's Accountants' Handbook, 2d ed. 1099 *et seq.*

Plaintiff's next contention is that as interpreted by the defendant commission and by the trial court the statutory provision which forbids a deduction from its income tax assessment for the interest paid on that part of its bonded debt owned by its stockholders is a denial of the equal protection of the law guaranteed by the fourteenth amendment. In support of this argument plaintiff cites familiar cases which hold that classifications therein must rest on some fair and substantial basis, and that classifications which ignore these principles will receive no judicial countenance. Among the cases cited is *Mount Hope Cemetery v. Pleasant,* 139 Kan. 417, 32 P. 2d 500, where this court rejected a theory of exemption based on distinctions of ownership. Critically examined, that case bears no substantial analogy to the case at bar. Exemption of cemeteries from taxation was based on a legislative theory of public policy, and we merely held that such legislative policy was not affected by the fact that in some instances the title to the cemetery lands was vested in a corporation, and in others such lands were held in individual ownership. We say that this cemetery case is not analogous, and yet it may be helpful in one respect. A matter of justifiable public policy prompted the legislature to exempt cemetery lands from taxation. The legislature has the paramount authority to promulgate the public policy of this state in matters of taxation as in all others. (*State v. Mercantile Co.,* 103 Kan. 733, 176 Pac. 321; *Dunn v. Jones,* 143 Kan. 771, 57 P. 2d 16; *Hunt v. Eddy,* 150 Kan. 1, 90 P. 2d 747; 50 C. J. 857-859; 6 R. C. L. 709, 710.) Public policy prompted the enactment of the recent amendment to the

statute with which we are presently concerned. The state tax commission in its 15th biennial report to the governor in 1936, dated January 12, 1937, said:

"The original Kansas income-tax act was as nearly like the federal revenue act of 1932 as possible. In the legislative session of 1935 the Kansas income-tax law was amended to conform with changes made in the federal law by the revenue act of 1934. Since that time the federal law has been amended by the revenue act of 1936 and, in the opinion of this commission, the Kansas law should be amended to make it as nearly like the federal law as possible. The policy of continuing the Kansas law as nearly like the federal law as possible will permit taxpayers to prepare their state income-tax return from the figures assembled for their federal return. . . . The principal amendments suggested are as follows:

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"2. Many corporations have avoided income tax by giving their stockholders interest-bearing notes in exchange for preferred stock. Section 6 (a) (2) should be amended to limit the deduction for interest paid to persons other than stockholders." (pp. 15, 16.)

In conformity with this recommendation the legislature enacted the amendment to the statute under present consideration. (Laws 1937, ch. 370, § 2, G. S. 1941 Supp. 79-3206.)

The state of New York has a substantially similar statute, part of which reads:

"The term 'entire net income' means total net income from all sources, without deduction of . . . (6) interest on indebtedness to stockholders or shareholders, or members of their immediate families, except interest on moneys borrowed for ordinary expenses of the corporation. . . ." (Laws of New York of 1935, vol. 2, ch. 745, § 14, subparagraph 3 [6].)

In a proceeding to review a determination of the New York state tax commission which had applied the statutory rule just quoted, the appellate division sustained the constitutionality of the statute (*People, ex rel. Retsoff Mining Co., v. Graves et al.,* 7 N. Y. S. 2d 769), and the United States supreme court dismissed the appeal (308 U. S. 503-504) "for want of a substantial federal question," citing *Anderson v. Forty-Two Broadway Co.,* 239 U. S. 69, 72-73; *Denman v. Slayton,* 282 U. S. 514, 519, 520.

In *Application of Market & Hammacher Co.,* 16 N. Y. S. 2d 774, the same provision of the New York income-tax statute came before the appellate division, and in discussing it the court said:

"The petitioner herein endeavors to distinguish the instant case from the circumstances of the Retsoff case by questioning the language of the statute as it refers to 'members of their [stockholders] immediate families.' . . .

The provision was inserted to prevent deliberate tax evasion. It is possible that the phraseology may be somewhat vague in an academic sense. However, the very circumstances exist here which the law seeks to cover, to wit: to prevent corporations and stockholders to pass rights to interest or indebtedness to wives and other relatives and by such devious routes to circumvent the question of the tax laws. The large proportion of persons to whom interest was paid by the petitioner corporation herein was readily definable as members of 'immediate families' of holders of the stock of this corporation. Payment of this interest was properly not allowed as a deduction from gross income." (p. 775.)

Another case reaffirming the validity of the New York statute was *People, ex rel. Glauber, Inc., v. Graves et al.*, 258 App. Div. 1006, 16 N. Y. S. 2d 754. The New York statute was amended in Laws of 1938, chapter 201, and again in Laws of 1939, chapter 675, but not in any material respect of present concern.

The Oklahoma income-tax statute deals with the subject of deductions for interest paid to corporations or persons interested in the tax-paying corporation, in part, thus:

"In no case shall a deduction for interest accrued or paid to a controlling or affiliated corporation be allowed in an amount greater than three (3%) per centum of the debtor corporation's outstanding capital stock which has been issued for money, or money's worth in property. The above limitation shall likewise apply to indebtedness owed to any other person owning, directly or indirectly, more than fifty (50%) per centum of the outstanding voting stock of such debtor corporation:" (Okla. Stats. 1941, Title 68, § 880 [b].)

Various features of this statute have withstood challenge of their constitutionality. (*Tradesmen's Bank v. Tax Comm'n*, 185 Okla. 656, 95 P. 2d 121, affirmed 309 U. S. 560; *Green v. Oklahoma Tax Com.*, 188 Okla. 168, 107 P. 2d 180; *Lawyers Lead & Zinc Co. v. Oklahoma Tax Commission*, 188 Okla. 590, 111 P. 2d 1085.) While these decisions are not strictly analogous, they did present the question we have to consider in the case at bar concerning discriminations which the legislature may lawfully make in respect to income-tax deductions. No better statement of the legislature's broad discretion in respect to such questions can be found than in *Carmichael v. Southern Coal Co.*, 301 U. S. 495, 509, 510, 109 A. L. R. 1327, where Mr. Justice Stone, now chief justice, speaking for a majority of the court, said:

"A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. (Citations.)

"This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

Not to extend this opinion unduly, after careful consideration of appellant's brief and argument and the authorities urged in its behalf, we feel bound to hold that the challenged statute does not infringe any provision of the fourteenth amendment.

On the point that the statute violates section 1 of article XI of the state constitution, we cannot concede that section 1 of article XI is all the constitutional law that bears on the subject. Section 2 of the same article also has the more important bearing on the point. While section 1 provides for a uniform and equal rate of taxation, section 2 is the one which particularly concerns itself with the power of the state to levy and collect taxes on incomes; and in respect to income-tax deductions which may be allowed and which may be forbidden, the legislature has plenary power to deal with the subject. As was said by the supreme court of Missouri, in *St. Louis Union Trust Co. v. State*, (Mo.) 155 S. W. 2d 107, "Not discrimination as such but only unreasonable and arbitrary discriminations are prohibited by state and federal constitutions." (Syl. ¶ 3.)

The judgment is affirmed.

HOCH, J. (dissenting): Being unable to concur in this decision, I shall state briefly my principal reasons for dissent.

While the facts of the instant case are somewhat involved, the question presented may be simply stated. Under our income-tax law, the pertinent provision of which appears in the court's opinion, may a corporation, in computing its net taxable income, deduct the interest paid on indebtedness to stockholders for loans made by them for the purpose of proper *capital expenditures* for plant and facilities actually used in carrying on the business of the corporation? It is conceded that such interest on indebtedness to nonstockholders is deductible, but the court holds it is not deductible where the loans

were made to the corporation by stockholders. The state does not contend that the expenditures here involved were not proper and in every way legitimate. It does not deny that such plant facilities were necessary in the appellant's business or that they form a large and essential part of its income-producing property. The construction which we here give the statute will have general application and its soundness must be tested accordingly.

The court holds that the word "expenditures" as used in the statute is synonymous with "expenses"; that expenditures for plant and equipment are not "ordinary" expenditures for "actually carrying on the business" and that the statute was only intended to permit deduction for interest on loans advanced by stockholders to pay ordinary *operating expenses*. General dictionary authorities are cited wherein the terms "expenditures" and "expenses" are listed as synonyms, though the opinion states that certain textbooks on auditing and accounting appear to differentiate between the terms. The differentiation seems to me to be both plain and sound, and since the question at issue lies directly in the field of accounting I see no reason for discounting textbook authorities in that field. Moreover, the general listing of words as synonyms does not, of course, necessarily mean that they are always interchangeable. The word "expenditures" is a broad term, applying to *all outlays*. Such outlay may be, in the instant case, either for capital investment or to meet operating costs. The word "expenses" is generally used to apply only to outlays to meet current operating costs. And the word "ordinary" is by no means limited to a *frequently recurring* expenditure. An expenditure for needed plant, whether incurred at the inception of the business of the corporation or during later operation is certainly "ordinary"—it is not only "ordinary" but it is essential to "actually carrying on the business of the corporation" successfully. (*Welch v. Helvering*, 290 U. S. 111, 78 L. Ed. 212.)

But let us not stop with mere formal definitions. In order to test the soundness of constructions of a statute, we need to look at the intent and spirit of the law. What is the purpose and intent of the income-tax law? The obvious purpose—in the case of a corporation—is to levy a tax on the net income available for distribution in dividends to stockholders, after deducting from gross income the costs necessarily incurred in producing the income. Where a corporation borrows money either from stockholders or nonstockholders, for creation of the plant necessary to carry on the business, interest

on the indebtedness must of course be paid before any funds are available for dividends. That is equally true whether the debt be to a stockholder or to a nonstockholder. A stockholder who has loaned money to the corporation is a creditor—nothing more nor less—to the extent of the bonds which evidence the indebtedness. As a bondholder, he has the disadvantages, as well as the advantages, under the law, of a creditor as compared with a stockholder. Furthermore, he must report in his individual income-tax return the interest received on his bond. Certainly an expenditure which a corporation has had to make for interest on its debts does not then represent *"ability to pay"* taxes.

Let me pose a simple case to illustrate where the majority opinion would lead. A corporation—let us say a pipe-line company, as in the instant case—finds profitable operation impossible on account of inadequate plant facilities. Let us say its only chance to produce a net income is through the enlargement of its compressor stations. It seeks a loan for the purpose but investors generally are skeptical and no outside loans are found available. A stockholder or a group of stockholders, with greater faith in the company's possibilities, are willing to loan the money to the corporation, which will give them the priority status of creditors to the extent of the loan, but are not willing to invest merely as stockholders through new stock issues. Let us suppose that the year after the new compressors are installed the increase in income is just enough to pay the interest on the loan. Obviously the company does not yet have any net income out of which income tax can be paid. It may just be "breaking even" or be actually "in the red." But the interpretation here adopted would deny deduction for the interest and compel the company to pay income tax on the interest it was required to pay on its debt. I don't think the legislature intended such a result. In my opinion the plain and proper intent was to allow no deduction for interest payments to stockholders, unless the expenditures were for legitimate purposes within the normal scope of the company's business. The purpose was to prevent collusive tax evasions by interest payments to stockholders on alleged loans not made for "ordinary expenditures," either for plant or for operation, incident to actually carrying on the business. Any other interpretation leads to taxing an "income" which does not in fact exist.

It may be noted in passing that the legislative history of the statute at issue shows that the original bill contains the word *expenses*

but that upon the recommendation of the Senate committee which reported the measure for passage the word *expenses* was struck out and the words *"expenditures* for actually carrying on the business" substituted therefor. (Senate Journal for March 15, 1937, p. 475.)

I shall not here discuss the constitutional question. In my opinion, doubt as to validity of the statute as construed by the court does not arise because of any lack of legislative power to apply, within reason, a different rule to stockholders and nonstockholders. It arises from the fact that the statute, as construed, would attempt, in cases, to impose a tax on "net income," when in fact there is no net income.