No. 35,570

THE WYANDOTTE COUNTY GAS COMPANY, *Appellant,* v. THE STATE
COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KAN-
SAS, Composed of John McCuish, William Ljungdahl and Fred
Horn, Commissioners, and Bert E. Mitchner, Director of Revenue,
*Appellees.*

(127 P. 2d 481)

Opinion filed July 11, 1942.

*Robert D. Garver,* of Kansas City, Mo., argued the cause, and *J. H. Brady,*
of Kansas City, was on the briefs for the appellant.

*James D. Dye,* of Ottawa, argued the cause, and *Mason Mahin,* of Smith
Center, was on the briefs for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The appellant was the operating gas company of the
Cities Service organization in the Kansas City area. Appellant ob-
jected to the disallowance of certain expenses listed as deductions
from gross income in its state income tax returns for 1937 and 1938.
After hearings before the director of revenue and before the com-
mission of revenue and taxation, the gas company appealed to the
district court of Wyandotte county. The district court affirmed
the orders of the commission and the gas company has brought the
case to this court for review.

In the district court the matter was heard largely on a stipula-
tion of facts. In the taxpayer's 1937 income tax statement a de-

duction of $30,120.20 from gross income was claimed for a management fee paid by the taxpayer to the Cities Service Company. This claimed deduction was disallowed by the commission and the district court. It appears from the record this fee had not been allowed as a deductible expense in prior years and the taxpayer had never before raised the question that it should be considered a proper deduction. The stipulation sets out the further pertinent facts concerning this claimed deduction as follows:

"That in its return for the year 1937, taxpayer deducted from its gross revenue as an operating expense the sum of $30,120.20, which was a management fee paid to Cities Service Company computed on a basis of 1¾ percent of its gross revenue, the same being a charge which had been paid by the taxpayer either to Henry L. Doherty & Company or Cities Service Company since May, 1929.

"The commission disallowed this deduction for the following reasons, as stated in its order:

" 'The facts disclose and the commission finds that the taxpayer pays a management fee of one and three-fourths percent of its gross revenues to the Cities Service Company under a contract dated September 1, 1929.'

"The commission further finds that the New York management fees paid to the Cities Service Company were based upon a percentage of gross income and were computed without regard to actual services rendered. Such fees, therefore, do not constitute an ordinary and necessary business expense within the meaning of section 79-3206 (a), (1) General Statutes of Kansas Supplement, 1939, and are not an allowable deduction."

The part of the statute involved, now appearing in G. S. 1941 Supp. 79-3206, reads:

"(a) In computing net income, there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid during the taxable year in carrying on any trade or business. . . ."

The regulation of the commission adopted under authority of statute reads:

"Art. 39. *Compensation Paid for Personal Services.* A reasonable allowance for salaries or other compensation paid for personal services actually rendered is deductible. The test of deductibility of such payments is whether they are reasonable consideration for the services rendered and whether they are in fact payments purely for service. If an ostensible salary paid by a corporation is in excess of those ordinarily paid for similar services and the excessive payments correspond or bear a close relationship to the stock holdings of the recipients, the excess deduction will be disallowed to the corporation and taxed as a dividend to the recipient. . . ."

The position of the gas company before the director of revenue and before the commission seems to have been that the commission

had no authority to question either the reasonableness of this management fee or the good faith of the officers of the utility company in entering into the contract. No attempt was made before the commission or in the district court to show the value of any services rendered the taxpayer by the Cities Service Company or in fact that any services had been rendered.

In the district court attention of the court was directed to the cases of *Wichita Gas Co. v. Public Service Comm.*, 126 Kan. 220, 268 Pac. 111; *Wichita Gas Co. v. Public Service Commission*, 3 F. Supp. 722; *Wichita Gas Co. v. Public Service Commission*, 2 F. Supp. 792. In these cases the above contract for management fees, as it pertained to other subsidiaries of the Cities Service organization was mentioned in connection with the fixing of gas rates. In some of these cases the fees provided for by the contract had been considered in finding a proper base for the calculation of gas rates. Appellant's contention seems to be that because the fees were taken into account in those cases in fixing gas rates, the commission cannot now disallow them in assessing appellant's income tax. The appellant does not go so far as to contend that the question is *res judicata*, as of course it is not. The parties and issues in the former cases were different from those in this case. The court is of the opinion that nothing said in the above-mentioned cases has any real bearing upon the issues now before the court.

In *Nutrena Mills, Inc., v. State Tax Comm.*, 150 Kan. 68, 91 P. 2d 15, a taxpayer claimed a deduction from its gross income for a management fee paid to a parent corporation. The fee in the Nutrena case had great similarity to the fee paid and set out in the case now under consideration. In the Nutrena case the taxpayer offered proof of the reasonableness of the fee. The commission allowed a deduction based upon only a part of the fee which had been paid. The same statutes and regulation of the commission were involved in the Nutrena case that are now under consideration in this case. On appeal this court affirmed the reasonableness of the commission's order. As to the authority of the tax commission (now the commission of revenue and taxation) to inquire into the propriety of expenses claimed as deductions from gross income, we said in the Nutrena case:

"It is well settled that the tax found by the tax commission to be due is presumed to be valid; the taxpayer has the burden of showing its invalidity. (*United States v. Reitmeyer*, 11 F. 2d 648.) Deductions from gross income are allowed as a matter of legislative grace. A taxpayer seeking a deduction in

computing taxable income must be able to point to an applicable statute and show that he comes within its terms. (*White v. United States,* 59 S. Ct. 179.) The fact the taxpayer has entered into a contract with stockholders, officers, or others to pay a fixed portion of its income for salary or other services does not, standing alone, make the amount paid under such a contract 'ordinary and necessary expenses' of conducting the trade or business. (*Samuel Heath Co. v. United States,* 2 F. Supp. 637; *Hecht v. United States,* 54 F. 2d 968; *Traylor Engineering & Mfg. Co. v. Lederer,* 271 Fed. 399; *Moxa Building Co. v. Commissioner of Internal Revenue,* 31 B. T. A. 457; affirmed, 79 F. 2d 1004.)

"Whether such payments are ordinary and necessary expenses of the business, and the reasonableness of the sums paid, are always open to inquiry. A variety of circumstances have been considered by the courts in the cases collected in American Digest System, Internal Revenue, Key No. 7 (17) (18). In some instances the deduction claimed was allowed, in others it was denied, depending on the facts shown. It would serve no useful purpose to cite and analyze these cases. We have examined all of them cited by counsel and many more. We find nothing in them which would require or justify the reversal of the judgment of the trial court in this case, and it is therefore affirmed." (p. 75.)

The ruling in the Nutrena case is controlling as to the taxpayer's contention concerning the management fee.

The remaining complaint of the taxpayer concerns the refusal of the commission to allow as a deduction from gross income the sum of $92,880 paid out by the taxpayer as interest on its bonds. This amount was claimed in both the income tax return filed by the gas company for 1937 and 1938. In denying the claimed deductions the commission made the following findings:

"The facts further disclose and the commission finds that the entire issue of $1,548,000 of 6 percent bonds upon which the interest in question was paid were owned in their entirety by the Cities Service Company, which company also owns the entire common stock of the taxpayer.

"The commission further finds that the interest paid to the parent company (Cities Service Company) was interest paid to the corporation stockholders, and was for money borrowed for the purpose of making expenditures of a capital nature, and such deduction is not allowable under section 79-3206 (a) (2), General Statutes of Kansas Supplement 1937, and article 42 of the regulations promulgated thereunder."

The real question as to this phase of the case was before us in our recent decision in *Natural Gas Pipe Line Co. v. Commission of Revenue and Taxation,* ante, p. 416, 125 P. 2d 397. The opinion in that case had not been filed at the time appellant prepared its brief in this case. We are convinced there is no appreciable difference in the application of the provisions of the statute (G. S. 1941 Supp. 79-3206) to the two cases. The only real difference in the facts in

the two cases is that in the Natural Gas Pipe Line case the bonds were issued directly to the stockholders and in this case it appears that the bonds in question were issued to the public but later the entire bond issue was acquired by the Cities Service Company which had also acquired the entire capital stock of the Wyandotte County Gas Company.

It is argued that if the interest on these bonds is held not to constitute a valid deduction then every corporation must change its accounting for income tax purposes each time a stockholder purchases some of the company's bonds in the open market. It will not be necessary to decide the hypothetical case at this time. That is not this case. Here all the bonds and all the stock are in the hands of the same holder.

Appellant again objects that the deduction is disallowed purely on the ground of ownership and cites *Mount Hope Cemetery Co. v. Pleasant,* 139 Kan. 417, 32 P. 2d 500. The Mount Hope Cemetery case is fully discussed in the majority opinion in the Natural Pipe Line Company case *(ante,* p. 420).

There is no need to prolong this opinion. The judgment of the district court approving the orders of the commission was correct and is hereby affirmed.

HOCH, J. (concurring in part and dissenting in part): I concur in the decision on the issue as to management fees. In the absence of a showing by appellant as to the nature and extent of the services for which such fees were charged by the parent company and as to the reasonableness of the formula used for allocating the charges to subsidiary companies the commission was clearly justified in refusing to allow deductions.

I must again dissent from the view that interest paid to stockholders on debts incurred for capital expenditures may not, under any circumstances, be deducted in computing net income. My views on that issue were briefly expressed in a dissenting opinion in the recent case of *Natural Gas Pipe Line Co. v. Commission of Revenue and Taxation,* 155 Kan. 416, 423, 125 P. 2d 397, here followed, and I would not now be reiterating that dissent except for a firm conviction that the interpretation which the decision gives to the statute involved is fundamentally unsound, doing violence to the basic principle upon which an income tax rests. With no attempt at thorough treatment of the subject, I shall merely add short comment to what was said in the former dissent.

In their brief in this case the appellees accurately summarize the former decision as follows: "This court held in the Natural Gas Pipe Line case that *capital expenditures* are not ordinary expenditures for actually carrying on the business of the corporation."

Again I submit that such expenditures are not only *ordinary*, but that of course the corporation could not *actually carry on the business* without them. Without the necessary plant the corporation can no more earn the income that is to be taxed than it could if it had the plant but did not operate it.

The primary principle of an income tax is that it is a tax levied on "ability to pay." That involves, obviously, the idea that the tax is to be levied on *net* income, for unless there be *net* income there can be no ability to pay. That our law is intended as a tax on *net* income is unquestioned. But when we say that under our statute the taxpayer may not deduct from gross income the interest which he has to pay on debts incurred for capital expenditures, necessary for carrying on the business, we transform the tax, to that extent, from a tax on *net* income to a tax on *gross* income. The result, by the same token, is a tax levied *without regard* to ability to pay. To illustrate: A company finds itself just "breaking even" after paying interest—along with other necessary outlays—on debts lawfully and honestly incurred to stockholders who have advanced funds for necessary capital expenditures. It has no net income. It has no "ability to pay." But under our interpretation of the statute, the money necessarily paid out for such interest charges must be treated as *income* and taxed as such. The tax thus becomes one on *gross* income, for there is no *net* income. I find nothing in the statute which indicates that the legislature intended such an illogical and unsound result.

Conceding that the legislature has broad power to determine what deductions are to be allowed in determining taxable income, why should we adopt an interpretation which denies the right to deduct expenditures which have to be made before any net income can be said to have been earned? Suppose the legislature should say that in computing the "net income" to be taxed no deductions shall be made for operating expenses? Is it clear that such an "income tax" law would be valid simply because a broad power exists to determine the allowable deductions? How far along the road of confiscation may a legislature go under the guise of an "income tax" law? That question may not arise out of the factual situation in the instant

case, but it clearly inheres in the interpretation which we have here established for general application.

Appellees cite, for illustration, our statute (G. S. 1941 Supp. 79-3206) which denies deduction for interest paid on money borrowed to purchase securities the interest of which is tax exempt. The answer is obvious. Not only is such an expenditure not necessary for "actually carrying on the business" but the provision is clearly aimed at evasion of the tax. While I shall not extend this dissenting opinion by analysis of other provisions and cases cited, I think they may be similarly distinguished from the instant case. Certainly any deduction may be and should be disallowed when the expenditure is not reasonably required in order to earn the income. To say that the legislature may fix deductions wholly without regard to that principle is to ignore fundamentals.

One more comment. Appellees ask: "If a capital expenditure is an ordinary expenditure as intended by the statute, what expenditure would not be ordinary so as to give the statute operative effect?" No imagination is necessary to give many illustrations, for answer. The day being warm, as I write, I suggest the case of a loan by stockholders to build a swimming pool in the corporation's office building. Deduction of interest might be disallowed on the ground that the expenditure was neither "ordinary" nor "necessary for actually carrying on the business" of the corporation! Countless other better illustrations might be given. They would illustrate the intent of the legislature, as I construe it, to prevent any deductions for interest paid on loans for unnecessary or "phony" expenditures, whether those expenditures are for alleged operating expenses or capital outlay. The acid test is, Are the expenditures, whether in plant or for operating expenses, reasonably necessary in order to *earn* the income that is to be taxed? In other words, in the language of the statute, was the money "actually borrowed," and were the expenditures "ordinary," for "actually carrying on the business"?

Under the interpretation of the statute adopted by the court, the income tax law is given a new efficiency—it is made to work both comin' and goin'. The stockholder must pay an income tax—and properly so—upon the interest which he *receives* on his loan to the corporation, and the corporation must now pay an "income" tax on the same money which it *pays out* to the stockholder! I submit that this disregard of fundamentals makes the term "net income" something wholly artificial and without essential meaning.