No. 36,892

W. L. HARTMAN, H. H. BLAIR and LOIS B. HARTMAN, *Appellees,* v. THE STATE COMMISSION OF REVENUE AND TAXATION, *Appellant.*

(187 P. 2d 939)

Opinion filed December 6, 1947.

*Mason Mahin,* of Smith Center, argued the cause, and *Charles C. Rankin,* of Lawrence, and *Clayton D. Christey,* of Caldwell, were with him on the briefs for the appellant.

*John F. Eberhardt,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, George B. Powers, Samuel E. Bartlett, Andrew F. Schoeppel, Carl T. Smith, Stuart R. Carter* and *Thomas E. Woods,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: The principal question presented by this appeal is the constitutionality of a portion of the 1935 income tax law, as

later set forth. In the district court three separate actions involving the interests of three stockholders in the same corporation were consolidated and tried together and determined as one case. The facts are not in dispute and in stating the case we shall refer only to W. L. Hartman, for what is said as to him is applicable to the other two stockholders.

On May 23, 1933, Hartman, hereafter referred to as the taxpayer, acquired stock in a certain Kansas corporation at a cost of $4,831.40. On February 21, 1934, Blair acquired stock in another Kansas corporation at a certain cost. In October, 1934, the two corporations were merged into Hartman-Blair, Inc., and the taxpayer had stock for his share. All of the earnings of this corporation were from sources within the state and at all times it made its corporate income tax returns and paid the tax due. In October, 1943, Hartman-Blair, Inc., was dissolved and the corporation was liquidated and for his stock the taxpayer received property of the value of $48,755.89. In due time he filed his income tax return for 1943 in which he showed a gain of $43,924.48 and that the taxable percentage thereof was thirty percent, and he remitted accordingly. The income tax division of the state commission of revenue and taxation made an assessment based on an interpretation that the taxable percentage was one hundred percent of the gain. The taxpayer presented his protest to that assessment to the state commission of revenue and taxation, hereafter called the commission, urging that the statute as construed and applied to him was unconstitutional and the assessment void. This protest was denied and the taxpayer appealed to the district court. The issues as made up in the district court presented the same questions as did the above protest and as are hereafter discussed. At the trial in the district court it was stipulated that the sole controversy and the only issue for determination was whether G. S. 1935, 79-3213 (d) was unconstitutional as contended by the taxpayer, or was constitutional as contended by the commission, it being agreed that the taxpayer's income tax return for 1943 was proper and correct if the statute was unconstitutional, and that the assessment by the commission was valid and correct if the statute was constitutional.

The district court found and declared that G. S. 1935, 79-3213 (d) as applied to the taxpayer was unconstitutional and that the order of the commission making a deficiency tax assessment against him should be set aside; that the individual income tax made by

the taxpayer for the taxable year 1943 was properly computed and correct and that he did not owe any additional income tax to the state for the taxable year of 1943, and it rendered judgment consistent therewith. The commission filed a motion for a new trial, which was overruled, and thereafter it perfected its appeal to this court from the judgment and ruling of the trial court.

Although the contentions of the parties as presented in their briefs cover a wider field, and their statements of the questions presented are not wholly in accord, the precise question presented by the appeal is the constitutionality of a statute which, for income tax purposes, imposes upon a taxpayer a tax upon gains from the sale of a capital asset, in this case stock in a corporation, at one rate, dependent upon the time the asset was held by him, but imposes upon a taxpayer a tax at a different and higher rate if a corporation is liquidated and the assets or the proceeds therefrom are distributed to the stockholders of whom he is one.

As indicated above, this appeal arises largely from that portion of Laws 1935, ch. 312, § 8 (G. S. 1935, 79-3213), quoted later. Although a further analysis is later made, it may be said here that the entire section contained four general subdivisions. Under (a) it was provided that the basis for determining gain or loss upon the sale or other disposition of property should be the cost of such property except in specified instances, *all of which refer to the date of acquiring the property* and which include stock or securities acquired after December 31, 1932, where the basis shall be the basis of the stock sold, adjusted under regulations prescribed by the tax commission in three situations as provided in the act. Under (b) it was provided that the adjusted basis for determining gain or loss from the sale or disposition of property, *whenever acquired,* should be the basis determined under (a), adjusted as later provided in the act, and (D) thereof provided for stock, and that, to the extent not above provided, for the amount of distributions previously made which, under the act, either were tax free or were applicable in reduction of taxes. Under (c) provision was made for exhaustion, wear and tear, obsolescence and depletion. Under (d) it was provided:

"(d) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. *Despite the provisions of section 79-3216 (a)*

*as amended herein, 100 percent of the gain shall be taken into account in computing net income."* (Italics supplied.)

Section 79-3216, referred to above, was section 16 of our original income tax law, as amended by Laws 1935, chapter 312, section 10, and appears as G. S. 1935, 79-3216. Subdivision (*a*) provided that in the case of a taxpayer other than a corporation, gain or loss upon sale or exchange of a capital asset should be taken into account in computing net income in accordance with a schedule of percentages based upon the length of time the assets had been held. Under that schedule the percentage was thirty percent if the assets had been held for more than ten years.

To complete the statutory history we note that subsequent to 1943, the taxable year here involved, the legislature, by Laws 1945, chapter 365, sections 1 and 2, amended G. S. 1935, 79-3213, in such manner that the language of subdivision (*d*) as italicized in the above quotation was eliminated, and amended 79-3216 to provide a different percentage basis for accounting.

In view of the rule that all presumptions are in favor of the validity of a statute (*Leavenworth County v. Miller,* 7 Kan. 479, 12 Am. Rep. 425; *State, ex rel., v. Nemaha County,* 7 Kan. 542; *Stelling v. Kansas City,* 85 Kan. 397, 116 Pac. 511), and in view of the trial court's decision that the portion of the statute quoted above was unconstitutional, we first take note of the taxpayer's reasons as asserted in his brief, why that decision was correct.

It may be said that the specific constitutional provisions to which our attention is directed are section 1 of the bill of rights and sections 1 and 2 of article 11 of the state constitution, and the fourteenth amendment to the United States constitution.

The taxpayer directs attention to authorities holding that a classification in a tax statute must be reasonable, natural, founded upon a just and rational basis, and not be arbitrary, oppressive, hostile, capricious, illusory or fanciful (51 Am. Jur. 235 *et seq.*). He admits that this court has held that income taxes are in their nature excise taxes and that this court in many decisions has held that the provision of article 11, section 1, that taxes must be uniform and equal pertains to ad valorem taxes and not to excise taxes, but suggests that these cases appear to be impeached by what is said in *Natural Gas Pipe Line Co. v. Commission of Revenue and Taxation,* 155 Kan. 416, 423, 125 P. 2d 397. The taxpayer says that whether the tax legislation is embraced in article 11, section 1, is not the deter-

minant, however; that the fourteenth amendment to the federal constitution requires uniformity and reasonableness in classification whether the Kansas constitution does or not; that it is a limitation inherent in the power to tax, irrespective of any formal constitutional provision, that a revenue act contain no arbitrary or unreasonable discriminations, and consequently, principles relating to classification and discrimination generally are applicable to excise taxation (51 Am. Jur. 212); that the principle against arbitrariness in tax legislation, in excise tax cases, has been recognized in this state (*Wheeler v. Weightman,* 96 Kan. 50, 65, 149 Pac. 977, L. R. A. 1916 A, 846; *City of Atchison v. Beckenstein,* 143 Kan. 440, 54 P. ·2d 926) and our attention is directed to decisions of the United States supreme court where the rule stated has been stated and applied. (See, e. g., *Quaker City Cab Co. v. Penna.,* 277 U. S. 389, 72 L. Ed. 927, 48 S. Ct. 553, which was quoted approvingly in *Mount Hope Cemetery Co. v. Pleasant,* 139 Kan. 417, 423, 32 P. 2d 500; and, also, *Colgate v. Harvey,* 296 U. S. 404, 80 L. Ed. 299, 56 S. Ct. 252.) The taxpayer directs our attention to decisions holding in effect that distribution of assets of a liquidated corporation is distinguishable from a dividend paid by a going corporation, and is in effect the same as though the stockholder had sold his stock to a third person, and that the entire section of the statute took that into consideration. In effect he argues that the entire section dealt with capital assets and their disposition and for determining the amount of gain for income tax purposes, but that in providing that where there was a sale of the stock itself one rate of tax was applicable, while where the corporation was dissolved another rate was applicable, the legislature made a classification that had no reasonable relation to the subject of the legislation, that the classification so made was irrelevant to the subject matter, was artificial and arbitrary, and was not based on a real and substantial difference when viewed in relation to that subject matter. In expanding his argument, the taxpayer argues that under the facts here existing had he sold his stock the day before the corporation was dissolved for the same amount he received on liquidation, he would have been liable for only thirty percent of his gain and his purchaser, who under such circumstances would receive the same amount that he paid would have had no tax, thus demonstrating the unreasonableness and lack of any real or substantial difference in the situation presented under the statute. He also directs attention to the fact that our income

tax statute, as enacted and as amended from time to time, followed generally the federal income tax law and that while the federal income tax law as it existed in 1934 and for a short time thereafter did contain a similar provision to that under discussion, its purpose generally was to prevent withholding of payment of normal dividends subject only to payment of surtax, a form of tax never provided in our statutes; that the inclusion of the language italicized therefore was inadvertent, not supported on any plausible basis, was without any reasonable or substantial basis and was unconstitutional.

Under four general headings, the commission states its contentions why the judgment of the trial court was erroneous:

The gist of the first contention is that the statute which the director was charged to administer was clear, and thus the assessment was proper and lawful.

Under its second heading the commission notes that the legislature in enacting our state income tax law endeavored to make it as nearly like the federal act as possible, and our attention is directed to the federal internal revenue act of 1934 containing a provision similar to that under consideration. The commission concedes the U. S. supreme court has never passed on its constitutionality, but does direct our attention to *Helvering v. Weaver Co.*, 305 U. S. 293, 83 L. Ed. 180, 59 S. Ct. 185, where it was said:

"Congress, in enacting the 1934 Act, recognized that under that of 1932 ' . . . a distribution in liquidation of a corporation is treated in the same manner as a sale of stock.' Report of Senate Committee on Finance, No. 558, 73rd Cong., 2nd Sess., p. 37. To prevent avoidance of surtax through liquidation of corporations with large surpluses, Congress found it necessary to place gains on liquidations on a different basis from gains on sales. It accomplished this by amending § 115 (c) to provide: 'Despite the provisions of section 117 (a) [corresponding to § 101 in the earlier Acts specially taxing capital gains and losses] 100 per centum of the gain so recognized shall be taken into account in computing net income.' 48 Stat. 711." (l.c. 296.)

Under its third heading the commission argues that the statute under consideration did not violate the fourteenth amendment to the constitution of the United States. Summed up, the argument is that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no federal constitutional provisions and a legislature is not bound to tax every member of a class or none; that the legislature could make distinctions of degree having a rational basis which, when subjected to judicial scrutiny, must

be presumed to rest on that basis if there was any conceivable state of facts which would support it (*Carmichael v. Southern Coal Co.,* 301 U. S. 495, 509, 81 L. Ed. 1245, 57 S. Ct. 868; *Welch v. Henry,* 305 U. S. 134, 83 L. Ed. 87, 59 S. Ct. 121), and any classification was permissable which had a reasonable relationship to some permitted end of governmental action, and it was enough if the classification was reasonably founded in the purposes and policy of taxation (*Heisler v. Thomas Colliery Co.,* 260 U. S. 245, 255, 67 L. Ed. 237, 43 S. Ct. 83). Among other cases to which our attention is directed is *Oursler v. Tawes,* 178 Md. 471, 13 A. 2d 763, where it was held that to tax incomes from investments at a higher rate than ordinary income conformed to the equal protection of the federal constitution.

Under its fourth heading the commission argues that the statute did not violate the state constitution, and our attention is directed to many of our own decisions holding that license taxes, special assessments, gasoline taxes and others of like character were not property taxes and were not subject to the limitations of article 11, section 1, that the legislature shall provide for a uniform and equal rate of taxes. Our attention is directed to other authorities that an income tax is not a property tax, but partakes of the nature of an excise. That the above state of law existed when our constitution was amended in 1933 (now article 11, section 2) to provide that the state shall have power to levy and collect taxes on income from any source and that the tax might be graduated and progressive, and it is a logical conclusion that considered either as a property tax or an excise tax, insofar as income tax is concerned, section 1 was superseded by section 2, that being the obvious purpose of the amendment.

Authorities from other states are cited in support of the conclusion stated, and quotation is made from the concluding paragraph of *Natural Gas Pipe Line Co. v. Commission of Revenue and Taxation,* supra, as bearing thereon. After quoting from *Hunt v. Eddy,* 150 Kan. 1, 90 P. 2d 747, the paragraph beginning on the bottom of page 4 of our reports, dealing with rules of construction of a statute, the commission concludes that it is obvious the statute did not violate our state constitution.

We here note that the commission in its brief makes no effort to state any reason or situation of facts that shows the classification made in the statute was relevant to the subject matter of the entire section or to the act as a whole, or that it was reasonable or natural

or founded upon some rational basis other than its similarity to the federal income tax act. Apparently it is left to this court to learn if there was any conceivable state of facts to justify the legal propositions the commission advances.

Speaking generally, it may be said that the legal principles asserted by the parties find support in the authorities cited by them, and that neither party contends otherwise—they differ only in the application of those principles.

In *Wheeler v. Weightman,* supra, decided long before we had any constitutional provision for an income tax law or any income tax law, this court considered validity of a mortgage registration tax law, and in the course of the opinion directed attention to the necessity of uniformity in ad valorem taxation of property, but recognized that our constitution does not limit the sources of revenue and that the legislature is left free to resort to subjects of taxation other than property, and that as to such sources of revenue discriminations and classifications might be made without infringing the constitutional rule of uniformity and equality, as that rule applied only to property taxes. The court cited our decisions holding to that effect with respect to license taxes, registration tax for regulatory and not revenue purposes, poll taxes, inheritance taxes, franchise taxes and privilege taxes, but then stated:

"The only limitations on the power to impose taxes of this kind are that the tax shall bear some reasonable relation to the right, privilege or franchise taxed, that classification shall be natural and not arbitrary or capricious, and that all persons or subjects in the same class shall be treated in the same way." (l. c. 65.)

A reference to Shephard's Kansas Citations will show that the above case has been cited frequently in later decisions and that the rule stated was recognized as sound. We pause here to note the taxpayer's contention that previous decisions of this court, including the last case, leading to a conclusion that an income tax is an excise tax and not subject to provisions of article 11, section 1, appear to be impeached by our decision in *Natural Gas Pipe Line Co. v. Commission of Revenue and Taxation,* supra. We think not. In that case it was contended an assessment of income tax was void because a statutory provision violated the last mentioned constitutional provision, as well as the fourteenth amendment to the federal constitution. Reference to that opinion will show we held the challenged statute did not infringe the federal constitution, and further that we could not concede that article 11, section 1, was all the con-

stitutional law that bore on the subject, and reference was then made to section 2 of the article.

After the state constitution was amended to provide that the state should have power to levy and collect a graduated and progressive tax on incomes from whatever source derived (art. 11, § 2), the legislature enacted such a law. We think it unnecessary to enter into any extended discussion whether a tax asserted under that act is a property tax, subject to any requirements of uniformity and equality as provided by article 11, section 1, of the constitution, or a tax in the nature of an excise or to determine that particular question. Let it be conceded for purposes of discussion that an income tax is an excise tax, any discrimination in the taxing act must be one that bears some reasonable relation to the subject of the act, and where a classification is made, that classification must be natural and not arbitrary or capricious, and all persons in the same class must be treated in the same way.

We need not dwell on the fact that the purpose of the income tax law was to provide for a graduated and progressive tax on income from whatever source derived, and that in a broad sense it might be said that anything dealing with what was taxable as income bore some relation to the subject matter of the act. Supplementing what has been said previously as to the history of the act we note that when the act was drawn, various parts of that subject matter were segregated, as an examination of the whole act will disclose. In the form in which it was enacted the original income tax act, Laws 1933, chapter 320, consisted of forty sections arranged under eight subtitles, and each section also had its own title. The act as it existed in 1943 represents only the original act as amended. Briefly it may be said that in the original act, after defining terms used, providing for rates of assessment and for organizations exempt from operations of the act, detailed provisions were made for computation of the tax, in which gross income is defined, for deductions allowable in computing net income, for items not deductible, for exemptions, and for certain other matters including a section dealing with determination of gain or loss. There follows the section presently involved (G. S. 1935, 79-3213) dealing with the "adjusted basis for determining gain or loss" upon the sale or other disposition of property, commonly known as capital gains or losses, and for a tax dependent upon the length of time held. It may be noted that in the 1935 amendment there was placed in the above

section the content of Laws 1933, chapter 320, section 12, the title of which was "Determination of gain or loss." Many other provisions were thereafter made to which attention need not be directed. Our concern is with the section dealing with adjustment of capital gains or losses (G. S. 1935, 79-3213), and the amount of tax due dependent on length of time held (G. S. 1935, 79-3216). Although reference is made in other sections to it, 79-3213 is the only section dealing with the adjusted basis for determining gain or loss on the sale or disposal of property. Subdivision (a) of this section refers generally to property acquired after December 31, 1932, under ten classifications, only one of which refers specifically to stock. Subdivision (b) refers generally to property whenever acquired, and makes classifications, one of which refers to stock. Subdivision (c) needs no notice here, and subdivision (d) has been quoted above.

As we construe section 79-3213, the subject matter therein treated is capital gains or losses arising from sale or disposal of any sort of property, and the classifications made under (a) and (b) treat all of that property alike, and under 79-3216, dependent on length of time held, all gain or loss is treated alike. Insofar as (d) is concerned, the first part thereof is simply a declaration that upon complete or partial liquidation of a corporation, amounts distributed shall be treated as full or part payment for the stock, but the last sentence introduces a provision that in such case despite the provisions of 79-3216 which would otherwise permit a percentage figure to be applied, one hundred percent of the gain shall be taken into account in computing net income. Does that provision bear a reasonable relation to the subject of capital gains and, if so, is the classification so made a natural and proper one or is it arbitrary and capricious and not based on a real and substantial basis when viewed in relation to the subject of capital gains? Are all holders of gains from capital assets treated alike? Both parties call our attention to the fact our original act was patterned after the federal act and was later amended to conform to changes in the federal act, and the commission states that the inclusion complained of was because of a similar provision in the federal act. As has been shown by quotation above, the federal purpose was to prevent avoidance of surtax (see *Helvering v. Weaver Co.*, supra), but was that any reason for the inclusion in our statute? G. S. 1935, 79-3205, as amended by Laws 1939, chapter 328, section 1, was in effect in 1943, the time here involved. Under its terms "gross in-

come" included gains and profits of whatever kind and in whatever form paid from businesses or dealing in property growing out of the ownership of such property, also from dividends, and that gross income did *not* include the following items "which shall be exempt from taxation under this act." Then followed eight detailed items and (8) reads as follows:

". . . that portion of dividends received from corporations representing earnings of such corporations on which an income tax has been paid to this state: *Provided,* That no exemption shall be allowed in any case where such corporations derive less than 15 percent of their net income from sources within this state."

It may be observed that the above section was amended by Laws 1945, chapter 364, section 2 (G. S. 1945 Supp. 79-3205). Under the facts, which are not in dispute, the corporation's earnings were entirely from sources within this state, the corporation paid its income tax to the state, and the dividends which it declared, or might have declared had there been any compulsion in the law, were not gross income on which the taxpayer had to make return and to pay income tax, nor was there any provision whatever in our income tax law for any surtax under any circumstances. The inclusion complained of cannot be justified because there is a similar provision in the federal act for, as appears above, there was no reason for inclusion in our state law though there may have been insofar as the federal act was concerned.

Our examination of the act shows that the subject matter of the entire section, the latter portion of which the commission applied as the basis for the assessment made, dealt with the general subject of capital gains and losses, and made general classifications with respect to the same; that under those general classifications, except (*d*), there was equality of treatment and all persons holding and disposing of capital assets, including stocks in a corporation, were treated alike. Such an examination shows that if it be considered that capital assets were classified and that the classifications so made were subject to further division, and that one of the divisions was capital stock, then it clearly appears that all holders of stock were not treated alike—some were subjected to greater burdens than others. Were that burden one which could be explained as having a reasonable relation to the subject matter of taxation, it might then be said that the classification made was natural, and that there was a fundamental difference in the situa-

tion of two stockholders, one of whom disposed of his stock by sale, and the other by having his share of assets distributed to him. But as appears above, both classes were treated alike until the assertion of the percentage rate was applied, when a discrimination was made. In our opinion the result was not one having a reasonable relation to the subject of the right and privilege taxed, the classification made was not natural, and the members in the same class were not treated alike, but on the contrary the classification made was arbitrary, capricious and discriminatory.

Having in mind the tenor of the income tax law as it existed in 1943, especially those sections stating what shall and shall not be taxed, we can conceive no state of facts which justifies the classification which was made by the last sentence in section eight of Laws 1935, chapter 312 (G. S. 1935, 79-3213). In view of all that has been said we are of the opinion that the provision made in the language last referred to violated the taxpayer's rights under article 11, section 2, of our state constitution.

In view of the conclusion reached, we need not determine any question whether there is any violation of the taxpayer's rights under the fourteenth amendment to the United States constitution.

The judgment of the trial court is affirmed.

HARVEY, C. J., dissents.